IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOHN RAY COLLINS, JR. and )<br>TAMBARA LORENE COLLINS )<br>a/k/a Tambara Lorene MacLean, )<br>)<br>Defendants. ) | Case No. 23-CR-114-JFH |

**REPORT AND RECOMMENDATION**

John Ray Collins, Jr. and Tambara Lorene Collins ("Defendants") were indicted on August 9, 2023, in a superseding indictment (Docket No. 43) charging Attempted Murder in Indian Country, Child Abuse in Indian Country, and Child Neglect in Indian Country. They seek suppression of evidence seized from their residence pursuant to a search warrant. Defendant John Ray Collins, Jr. filed a Motion to Suppress Search on September 20, 2023 (Docket No. 93) to which Defendant Tambara Lorene Collins joined through a Motion for Joinder filed on September 21, 2023 (Docket No. 95). On September 21, 2023, United States District Judge John F. Heil, III referred Defendants' Motion to Suppress to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket No. 94). For the reasons set forth below, Defendants' Motion to Suppress should be denied.

    A. Factual Background

On June 13, 2023, investigator Breanna Fierro of the Muscogee Nation Lighthorse Police Department sought a Tribal Court search warrant for the listed address of 1315 S. Oklahoma Ave. in Okmulgee, Oklahoma. The search warrant and the affidavit in support both listed the same address. (Docket No. 93, Exhibit1 at 2, 7). This search warrant was sought to seize evidence of a

crime, namely, "Physical Abuse of a Child" and "Child Neglect." *Id.* at 2. The search warrant details that a warrant was being sought to locate "any and all electronic devices, any and all children's bloody clothes, obtain photographs to show living conditions, and any and all out buildings." *Id.* at 3. The search warrant contains three photographs of the residence taken from various angles. *Id.* at 4-6. The affidavit in support of a search warrant describes the facts known to investigator Fierro at that time. (*Id.* at 7-10). The affidavit indicated that law enforcement contacted her regarding a "six-year-old male J.M. covered in bruises from head to toe." (*Id.* at 8). She noted law enforcement observed "J.M. had an injury to the side of his head," and was taken to the hospital where it was determined that "J.M. may have a skull fracture, lacerated liver, internal bleeding and possible broken [jaw]." (*Id.* at 8-9). A judge ordered law enforcement "to take all three children into custody." (*Id.* at 8). Additionally, "body cam footage showed J.M. sitting on the porch." *Id*. at 9. Notably, an image on Page 4 of the search warrant, depicted the porch of the property to be searched. (*Id.* at 5).

After a finding of probable cause, a search warrant for the residence was issued. *Id.* at 11. The issuing tribal judge signed the search warrant on April 13, 2023, and according to the search warrant return, it was executed the same day. (Docket No. 93, Exhibit 2 at 2). Recovered from the residence were four swabs taken from a mattress of what appeared to be blood, a pill bottle with three teeth inside, and a blanket with what appeared to be blood in the center. (*Id.*). The investigator also took 251 photos of the residence. *Id*.

Defendants filed a Motion to Suppress, claiming that the Tribal Officer's affidavit failed to establish probable cause that the place to be searched contains items connected with criminal activity. (Docket No. 93 at 1). More specifically, Defendants argue that the affidavit fails to reference any nexus between J.M. and the residence at 1315 S. Oklahoma Ave. *Id.* at 2.

B. Analysis

The defense argues, essentially, that the affidavit failed to establish a nexus between the place to be searched and the items to be seized. "It is well-settled that for probable cause to exist there must be a nexus between the contraband to be seized or suspected criminal activity and the place to be searched." *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) (quotation omitted). More problematic, however, is whether the underlying affidavit established that the residence described in the warrant was, in fact, the residence where the crime occurred; *i.e.*, whether the underlying affidavit established a sufficient nexus between the place to be searched and the suspected criminal activity or the suspect. "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990) (citation omitted). In this regard, the underlying documents established that: (i) J.M. was observed on a porch in the body cam footage, (ii) the search warrant location had a porch as depicted in the photographs submitted with the search warrant, and (iii) the address listed on both the affidavit and search warrant was the same address (1315 S. Oklahoma Ave.).

"In determining whether a search warrant was supported by probable cause, we review the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and simply ensuring that the [issuing] magistrate had a substantial basis for concluding that probable cause existed. Probable cause exists when the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." *United States v. Harris,* 369 F.3d 1157, 1165 (10th Cir. 2004) (quotation omitted). The test for probable cause is "common-sense" and "practical." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). An affidavit is not devoid of factual support "if it establishe[s] a

minimally sufficient nexus between the illegal activity and the place to be searched." *United States v. Henderson,* 595 F.3d 1198, 1202 (10th Cir. 2010) (quotation omitted). An affidavit establishes a sufficient nexus when it "describes circumstances which would warrant a person of reasonable caution to believe that the articles sought [are at a particular place]." *United States v. One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars in U.S. Currency,* 965 F.2d 868, 874 (10th Cir. 1992). It is without question that "judges may draw their own reasonable conclusions, based on the Government's affidavit and the practical considerations of everyday life, as to the likelihood that certain evidence will be found at a particular place." U.S. v. *Biglow,* 562 F.3d 1272, 1280 (10th Cir. 2009) (quotation omitted). Based on these "reasonable conclusions," judges may establish the nexus between the place to be searched and the evidence sought by drawing inferences about where such evidence might be kept, and "[a]llowing such inferences to establish a Fourth Amendment nexus is appropriate because probable cause is a matter of probabilities and common sense conclusions, not certainties." *Id.* (quotation omitted).

The scope of the information a judge may consider in determining whether there is probable cause is not limited to the four corners of the affidavit presented in support of the warrant sought. *Kaiser v. Lief,* 874 F.2d 732, 735 (10th Cir. 1989). Rather, the Tenth Circuit has confirmed that a judge may also rely on other materials submitted concurrently with a particular application. *Id.* Thus, in evaluating whether the warrant to search 1315 S. Oklahoma Ave. is valid, the undersigned Magistrate Judge may consider the information submitted in conjunction with the search warrant application presented to the tribal Judge, including the application, affidavit, photos and search warrant. Reasonable conclusions, common sense, and practical considerations of everyday life provide a sufficient basis as to the likelihood that certain evidence will be found at the house.

As set forth above, the affidavit indicated a child was injured, the body cam footage showed the child on the porch of the residence, and the search warrant contained pictures of the residence's porch. The affidavit lists the address and requests to search for bloody clothing. When taken as a whole, a reasonable inference can be drawn that this residence was where the alleged injury occurred. That inference establishes a minimally sufficient nexus between the illegal activity and the place to be searched. Accordingly, the undersigned Magistrate Judge finds that there was in fact probable cause that established a minimal nexus between the place to be searched and the suspected criminal activity.

In any event, it is not necessary to decide the probable cause question because the undersigned Magistrate Judge is also satisfied that the "good faith exception" to the exclusionary rule enunciated in *United States v. Leon*, 468 U.S. 897 (1984) applies to the execution of the warrant here. *See United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) ("[C]ourts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question."), citing *Leon*, 468 U.S. at 924-25; *see also United States v. Bishop*, 890 F.2d 212, 216 (10th Cir. 1989) ("[R]esolution of whether there was probable cause supporting the warrant is not necessary to our decision . . . because . . . the agents' conduct clearly falls within the 'good faith exception' to the exclusionary rule.") (citation omitted).

There are generally four situations in which the good faith exception to the exclusionary rule provided by *Leon* does not apply: (i) when the issuing judge was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth; (ii) when the issuing judge wholly abandons the judicial role; (iii) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to

render official belief in its existence entirely unreasonable"; and, (iv) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid. *See Leon*, 468 U.S. at 922-23.

Here, Defendants did not raise the argument that *Leon* is inapplicable. There is no evidence that the issuing judge was misled by an affidavit containing false information or information that the affiant would have known was false if not for her reckless disregard of the truth. There is no evidence that the issuing judge wholly abandoned the proper judicial role in issuing the search warrant. The only cognizable arguments to negate *Leon* would be that the affidavit for the search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" or the warrant was "so facially deficient that the executing officer could not reasonably believe it was valid." *Id.* The undersigned Magistrate Judge does not find that the affidavit underlying the search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. Nor does the undersigned Magistrate Judge find that the affidavit underlying the search warrant was "so facially deficient that the executing officer could not reasonably believe it was valid." *Id.*

As detailed above, the documents taken as a whole indicate a child was injured. The child was found on the porch of a residence, the residence in question had a porch, the affidavit listed the address and requests to search for bloody clothing. While minimal, the facts are that reliance would not be entirely unreasonable and that inference establishes a minimally sufficient nexus between the illegal activity and the place to be searched. Consequently, the good faith exception to the exclusionary rule set forth in *Leon* applies to this case, and the evidence seized from Defendants' residence need not be suppressed even if the underlying affidavit failed to establish probable cause.

C. Conclusion

The undersigned Magistrate Judge PROPOSES the findings set forth above and accordingly RECOMMENDS that the Defendants' Motion to Suppress (Docket No. 93) should be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b)(2), a party may file specific written objections to the Magistrate Judge's report and recommendations. The exigencies of the Court's calendar amid the ongoing *McGirt* crisis, and the need to maintain the trial date in this matter, require the Court to shorten the window for filing objections to seven (7) days with an additional seven (7) days for responses.[1] *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978); *Sabal Trail Transmission, LLC. v. 7.72 Acres in Lee Cnty., Ala.*, No. 3:16-CV-173-WKW, 2016 WL 10789585, at *1 (M.D. Ala. June 6, 2016) (collecting cases).[2] Any objections must be filed on or before October 6, 2023.

If specific written objections are timely filed, Fed. R. Crim. P. 59(b)(3) directs the district judge to:

> consider de novo any objection to the magistrate judge's recommendation. The district judge may accept, reject, or modify

---

[1] The undersigned Magistrate Judge shortens the objection period after consulting with the presiding judge in this matter, U.S. District Judge John F. Heil, III.

[2] Specifically, the Northern and Eastern Districts of Oklahoma have unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020). *McGirt* caused an immediate increase of nearly 200% in the number of criminal cases filed in the Northern District and more than 400% in the Eastern District. *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects. This extraordinary number of criminal cases thrust into federal court, virtually overnight, is unlike anything ever seen in this Country's history. Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt*. *Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022). Numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, 601 F. Supp. 3d 1105, 1114 (E.D. Okla. 2022) (collecting cases), *aff'd* 76 F.4th 1007 (10th Cir. 2023).

the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions.

Fed. R. Crim. P. 59(b)(3); see also 28 U.S.C. § 636(b)(1). Failure to timely object waives a party's right to appellate review. *See United States v. Goebel*, 959 F.3d 1259, 1266-67 (10th Cir. 2020).

DATED this 29th day of September, 2023.

_____
D. EDWARD SNOW
United States Magistrate Judge