IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 23-CR-114-JFH |
| JOHN RAY COLLINS, JR. and TAMBARA LORENE COLLINS, | |
| Defendants. | |

## OPINION AND ORDER

Before the Court is a motion to suppress ("Motion") filed by Defendant John Ray Collins, Jr. ("J. Collins") and joined by Defendant Tambara Lorene Collins ("T. Collins"). Dkt. No. 93 (motion); Dkt. No. 95 (joinder); Dkt. No. 107 (minute order granting joinder). The Court referred the Motion to Magistrate Judge D. Edward Snow for report and recommendation ("R&R"). Dkt. No. 94. Magistrate Judge Snow recommends the Court deny the Motion. Dkt. No. 122. Defendants jointly objected to the R&R. Dkt. No. 127. For the reasons stated, the Court ADOPTS Magistrate Judge Snow's R&R, OVERRULES Defendants' objection, and DENIES the Motion.

## BACKGROUND

J.M. and R.M. are brothers, six and four years old respectively. Dkt. No. 113 at 2. J. Collins is their stepfather and T. Collins is their biological mother. *Id.* J. Collins and T. Collins share a last name and an infant child, and they hold themselves out to be a married couple.[1] *Id.*

Between January and June 2023, J. Collins and T. Collins allegedly severely physically abused J.M. and R.M. Dkt. No. 43. Specifically, J. Collins is charged with attempting to murder

---

[1] No proof of a legal marriage has been presented to the Court.

J.M. by striking him on the head with a metal pipe; abusing J.M. by striking, kicking, twisting his arms and hands, and lashing him with an object; abusing R.M. by striking him; and neglecting J.M. by willfully and maliciously failing to provide him with adequate nurturance and affection, food, clothing, shelter, sanitation, hygiene, medical care, and supervision, by failing to obtain medical care, failing to provide food or water, failing to provide adequate nurturance and affection, and failing to provide sanitary living conditions to him. *Id.* T. Collins is charged with abusing J.M. by striking and lashing him with a belt and failing to protect him; abusing R.M. by striking him and failing to protect him; and neglecting J.M. by willfully and maliciously failing to provide him with adequate nurturance and affection, food, clothing, shelter, sanitation, hygiene, medical care, and supervision, by failing to obtain medical care, failing to provide food or water, failing to provide adequate nurturance and affection, and failing to provide sanitary living conditions to him. *Id.* J. Collins is charged as a non-Indian under 18 U.S.C. § 1152 and T. Collins is charged as an Indian under 18 U.S.C. § 1153.

The Government's briefing provides alleged details of the underlying facts. Dkt. No. 108; Dkt. No. 110; Dkt. No. 113; Dkt. No. 119.[2] It describes "a concerned citizen" who had attempted to visit Defendant's residence at 1315 S. Oklahoma Ave., Okmulgee, Oklahoma (the "1315 address") but had "been denied entry" by T. Collins. Dkt. No. 113 at 1. On June 12, 2023, this individual learned that Defendants were out of the house to take their infant to the hospital for a fever, and she entered the 1315 address because she had "developed fears for the children who lived within that household." *Id.* She found four-year-old R.M. and six-year-old J.M. home alone; R.M. had a large, circular bruise under one eye, while J.M. was "laying on [a] blanket, soaked in

---

[2] The factual statements in these briefs appear largely identical.

his own blood, on the floor of [a] bedroom." *Id.* at 2. When she asked J.M. if he was okay, he said he was not and that his mom and dad hit him a lot. *Id.* The individual left the residence and called the Okmulgee County Sheriff's Office ("OCSO").

J. Collins and T. Collins apparently arrived at their residence between the time the individual left and OCSO arrived. The Government describes OCSO body camera footage where T. Collins "showed hesitation" interacting with the officer, "insisted" to him that "our children are fine," eventually retrieved R.M. from inside the house after repeated request by the officer, is heard telling R.M. to "remember what I told you about all that lying," and is heard telling the deputy "we've been having lying problems." *Id.* at 2. The body camera footage also apparently shows J. Collins holding J.M. by the arm. According to the Government, J.M. had numerous apparent injuries and was in visible pain, and deputies reported that both R.M. and J.M. "smelled like stale urine and filth." *Id.* J.M. purportedly told OCSO at various times that "my mom and dad beat me up" and "I've been locked up in a room." *Id.* at 3.

OCSO initially involved the Muscogee (Creek) Nation ("MCN") Lighthorse Police Department before the case was referred for federal investigation and prosecution. On June 13, 2023, Lighthorse investigator Breanna Fierro obtained a search warrant from the MCN tribal court. Dkt. No. 93-1. The warrant authorized a search at the 1315 address for electronic devices; bloody children's clothing; security cameras; photos of the residence; and "out buildings within the curtilage." *Id.* at 1. It had three photographs appended, each showing the house to be searched, a one-story house with a porch, surrounded by a chain-link fence with various items strewn around the house and yard. *Id.* at 4-6. Fierro's probable cause affidavit for the warrant set out almost none of the facts described in the Government's briefing. Instead, the extent of its factual basis was:

3

> On June 12, 2023, [Fierro] received a phone call from [OCSO] Investigator Patrick Hale in reference to a six-year-old male J.M. covered in bruises from head to toe.
>
> Hale stated he received an order from the Judge to take all three children into custody. The children were later identified as Choctaw Citizens. J.M. was taken to Okmulgee [sic]
>
> Hale stated he noticed, [sic] J.M. had an injury to the side of his head and while being transported, he kept falling asleep. Hale took J.M. and his little brother R.M. to Okmulgee Hospital.
>
> Body cam footage showed J.M. sitting on the porch, he stated "my mom and dad beat me up" J.M. was holding his left arm.
>
> J.M. was taken to Okmulgee Hospital, where the doctor stated J.M. may have a skull fracture, lacerated liver, internal bleeding and possible broken draw [sic].

*Id.* at 8-9. The warrant return was submitted on June 21, 2023 and stated Fierro "obtained 251 pictures of the residence, 4 swabs were taken of the mattress from what appeared to be blood, a pill bottle with 3 teeth inside, [and] a blanket with what appeared to have blood in the center" from the 1315 address. Dkt. No. 93-2 at 2.

Both brothers allegedly received medical treatment and were later forensically interviewed. J.M. was taken to the Okmulgee Hospital and then life-flighted to St. Francis Hospital in Tulsa where he was hospitalized for a week, from June 13 to June 21, 2023, with a lacerated liver, kidney failure, and numerous other injuries. *Id.* During his forensic interview, J.M. told the interviewer that his parents "stompted" and "whooped" him; blockaded his door with two heavy totes so he could not get out to use the bathroom, get food or water, or brush his teeth; and did not clean the Paw Patrol potty in his room, which caused it to get "stinkier and stinkier." *Id.* J.M. also described his "dad" hitting him on the head with a big metal pipe that made some noises. *Id.* R.M. was taken to the Okmulgee Hospital and treated for extensive bruising and lacerations. During his forensic interview, he told the interviewer that his parents "beat [him] up" with their fists and

hands. *Id.* Each brother also described abuse inflicted on the other: J.M. said that the "whooping" happened to R.M. as well, and R.M. said that when his mom got mad, she "beats J.M. up." *Id.*

This federal case began by criminal complaint against T. Collins on June 15, 2023. Dkt. No. 1. The initial indictment, filed on July 12, 2023, also named only T. Collins as a defendant. Dkt. No. 20. J. Collins was added as a defendant in the superseding (and currently operative) indictment filed on August 9, 2023. Dkt. No. 43. Jury trial is set for November 6, 2023. Dkt. No. 41; Dkt. No. 65.

## AUTHORITY AND ANALYSIS

### I. Standard of review

When a party objects to an R&R, the Court is statutorily required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

### II. Probable cause and factual nexus

Defendants seek suppression of evidence recovered pursuant to the MCN warrant on the basis that the affidavit supporting the warrant lacked a sufficient factual nexus between the alleged crime and the location to be searched. Dkt. No. 93 at 2. Specifically, they argue that the affidavit described J.M.'s communications with an officer about things that had happened to him but did not connect J.M. or the reported abuse to the 1315 residence. *Id.* Magistrate Judge Snow recommends the Court deny the Motion. Dkt. No. 122. He reasoned that probable cause supported the issuance of the warrant, explaining:

> [T]he affidavit indicated a child was injured, the body cam footage showed the child on the porch of the residence, and the search warrant contained pictures of the

> residence's porch.  The affidavit lists the address and requests to search for bloody clothing.  ***When taken as a whole, a reasonable inference can be drawn that this residence was where the alleged injury occurred.  That inference establishes a minimally sufficient nexus between the illegal activity and the place to be searched.***  Accordingly, the undersigned Magistrate Judge finds that there was in fact probable cause that established a minimal nexus between the place to be searched and the suspected criminal activity.

*Id.* at 5 (emphasis added).  He also noted that if the facts regarding the injuries, porch, pictures, and anticipated bloody clothes were insufficient to establish probably cause, they still were such "that reliance would not be entirely unreasonable and that inference establishes a minimally sufficient nexus between the illegal activity and the place to be searched" and finding "the good faith exception to the exclusionary rule set forth in *Leon* applies . . . ." *Id.* at 6.

"To be constitutional, a search warrant must issue only upon probable cause." *United States v. Burns*, 624 F.2d 95, 99 (10th Cir. 1980).  Probable cause "requires more than mere suspicion but less evidence than is necessary to convict." *Burns,* 624 F.2d at 99.  This standard has also been described as a "fair probability." *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009).  To establish probable cause, an affidavit in support of a search warrant "must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).  A judge issuing a search warrant based on an affidavit must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 214 (1983).  "The issuing judge is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts." *United States v. Grimmett*, 439 F.3d 1263, 1270 (10th Cir. 2006).

"Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." *Danhauer*, 229 F.3d at 1006 (quoting *United States v. Corral-Corral*, 899

F.2d 927, 937 (10th Cir. 1990)). Therefore, an affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search at a particular residence would uncover contraband or evidence of criminal activity. *Id*. (citing *Rowland*, 145 F.3d at 1200). At the same time, however "the nexus requirement—like probable cause itself—is not reducible to a neat set of legal rules . . . [and] little additional evidence is generally required to satisfy the Fourth Amendment's strictures." *Biglow*, 562 F.3d at 1279 (internal citations and quotations omitted). An "affidavit does not have to be a model of specificity." *United States v. Chambers*, 882 F.3d 1305, 1311 (10th Cir. 2018).

"A district court reviewing the probable cause for a warrant puts itself in the shoes of the warrant's issuing jurist and gives substantial deference to the prior decision." *United States v. Moses*, 965 F.3d 1106, 1112 (10th Cir. 2020). The Court's duty is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39. "'[A]fter-the-fact, de novo scrutiny' of a magistrate's probable-cause determination is forbidden." *Biglow*, 562 F.3d at 1281 (modification in original) (quoting *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984)).

Undoubtedly, the affidavit is not a model of thoroughness. With the additional details about OCSO and MCN's investigation alleged in the Government's briefing, it would be all too easy to scrutinize its deficiencies. But that is not the Court's role at this time. While the Court is obligated to perform de novo review of Judge Snow's R&R, it is forbidden from performing de novo review of the underlying probable-cause determination. *Compare* 28 U.S.C. § 636(b)(1) *with Upton*, 466 U.S. at 732-33 ("[I]nstead of merely deciding whether the evidence viewed as a whole provided a 'substantial basis' for the Magistrate's finding of probable cause, the court conducted a

de novo probable-cause determination. [The Supreme Court has] rejected just such after-the-fact, de novo scrutiny.").

The tribal court judge who reviewed the affidavit determined that it sufficiently established a fair probability that evidence of the described criminality would be found at the 1315 address. As to criminality, Defendants claim in their Motion that, "[i]t appears the author assume[d] the authorizing judge would assume that J.M. was either hurt at that residence, lived at that residence, and/or most importantly there was probable cause that evidence of some criminality was located at 1315 S. Oklahoma." Dkt. No. 93 at 2. It is apparent to this Court that the photographs were attached for the very purpose of describing the house to be searched. The assumption that the child described in the affidavit resided in the house pictured in the affidavit materials, then, is a reasonable one. "Because the assessment of probable cause does not lend itself to a prescribed set of rules, a judge is free to draw, or to refuse to draw, any reasonable inferences as he will from the material supplied to him." *Moses*, 965 F.3d at 1112 (citations and quotations omitted).

As to the 1315 address, "[t]he test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003) (quotations and citations omitted) (explaining "[a] technically wrong address does not invalidate a warrant if it otherwise describes the premises with sufficient particularity so that the police can ascertain and identify the place to be searched"). Here, there was little risk that another premise might be mistakenly searched given the photographic depiction of the proper subject of the search.

8

Upon the requisite de novo review, the Court agrees with Magistrate Judge Snow's conclusion that the affidavit, photographs, and warrant taken together—and evaluated under the common sense principles required—establish a minimally sufficient nexus that J.M. and R.M. lived at and/or had been harmed within the house depicted in the photographs which is the 1315 address.

While no constitutional violation exists in this case, the Court notes that the investigators here ran the risk of asking the Court to assume too much. Based on the photographs depicting the residence to be searched, the Court made a fair assumption here, but every probable cause determination is fact-specific, and this case should be taken as a teaching moment that affidavits should not be written in such a way that courts must fill in the blanks.

## CONCLUSION

IT IS THEREFORE ORDERED that the Court ADOPTS Magistrate Judge Snow's R&R [Dkt. No. 122], OVERRULES Defendants' objection [Dkt. No. 127], and DENIES the Motion [Dkt. No. 93].

Dated this 17th day of October 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE